UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


NANCY BALLESTER-SALGADO,        )
            Plaintiff           )
                                )
            v.                  )    C.A. No. 11-cv-30257-MAP
                                )
MICHAEL J. ASTRUE,              )
Commissioner, Social            )
Security Administration,        )
            Defendant           )


MEMORANDUM AND ORDER REGARDING
PLAINTIFF'S MOTION FOR ORDER REVERSING DECISION OF
COMMISSIONER AND DEFENDANT'S MOTION FOR ORDER AFFIRMING
DECISION OF COMMISSIONER
(Dkt. Nos. 11 & 14)


November 7, 2012


PONSOR, U.S.D.J.


I. INTRODUCTION

    This action seeks review of a final decision of the

Commissioner of Social Security ("Commissioner") denying

Plaintiff's application for Social Security disability

insurance benefits.  Plaintiff applied for disability

benefits on December 23, 2008, alleging disability since

January 1, 2008, due to breast cancer, left breast

lumpectomy, left arm lymphedema, arthritis, high blood

pressure, and depression.  Following two hearings, the
Administrative Law Judge ("ALJ") found on April 5, 2011,
that Plaintiff was not disabled and denied Plaintiff's claim
(A.R. 18-42.), rejecting the determination by both of
Plaintiff's treating physicians that Plaintiff was unable to
work.  The Appeals Council denied Plaintiff's request for
review, thereby making the decision final.  Plaintiff filed
this complaint on November 14, 2011.

Plaintiff now moves to reverse or remand the order of
the Commissioner (Dkt. No. 11), and Defendant moves for an
order affirming the decision of the Commissioner (Dkt. No.
14).  For the reasons stated below, Plaintiff's motion will
be allowed, the decision of the ALJ will be reversed, and an
award of benefits will be ordered.  Defendant's motion will
be denied correspondingly.

## II. FACTS

At the time of the ALJ's decision, Plaintiff was forty-
six years old.  She had graduated from high school but did
not read or write English.  (A.R. 410.)  Plaintiff is left-
handed.  (A.R. 468.)

A.    Physical Conditions.

2

Plaintiff underwent a lumpectomy on January 7, 2009, after a mammogram showed a mass in her left breast.  (A.R. 425-27, 615-20, 636.)   The lumpectomy showed infiltrating ductal carcinoma. (A.R. 428.)  Plaintiff underwent chemotherapy from February 2009 through April 2009 (A.R. 555) and then radiation therapy from May 2009 through July 2009 (A.R. 553-4).

On July 12, 2010, Plaintiff reported ongoing discomfort in her left breast and slight swelling in her left arm to Dr. Grace Makari-Judson.  Dr. Makari-Judson diagnosed Plaintiff with mild lymphedema in the left arm and breast. (A.R. 531-2.)

The record also reveals diagnoses of significant arthritis, asthma, and high blood pressure. (A.R. 700-1, 706.)

B.   Mental Condition.

A consulting psychologist, Dr. Douglas Williams, examined Plaintiff on May 11, 2009, and found indications of major depressive disorder with a guarded prognosis. (A.R. 472.)

C.   Evaluations.

3

On January 12, 2009, November 9, 2010, and December 8, 2010, Plaintiff's treating physician Dr. Hernandez Bem completed questionnaires about Plaintiff's health status. (A.R. 709-11, 720-728, 731-34.)  He described Plaintiff's ability to sit, to stand or walk, to lift or carry, and to stoop or bend as very limited. (A.R. 709-710.)  Furthermore, Plaintiff was limited in her activities of daily living by the restrictions to the use of her arm. (A.R. 710.)  Her condition was chronic and would affect her ability to work for more than a year. (A.R. 723, 728.)

In his latest report, Bem stated that Plaintiff had muscle pain, depression, muscle weakness, chronic headaches, anxiety, and disturbed sleep. (A.R. 731.)  These impairments would be expected to last at least one year and were partially affected by emotional factors including depression and anxiety.(A.R. 731-32.)  Dr. Bem said that Plaintiff could sit for fifteen minutes and stand for fifteen minutes, and that she was not capable of working an eight-hour working day, for forty hours per week. (A.R. 732.)  Indeed, Dr. Bem concluded that Plaintiff could not work at all. (Id.)

4

On February 17, 2011, Dr. Makari-Judson, Plaintiff's
other treating physician, completed a questionnaire about
Plaintiff's health status.  She said that Plaintiff had left
arm lymphedema and chronic breast and "auxiliary" pain.
(A.R. 760.)  These symptoms were expected to last at least
twelve months. (Id.)  She also found that Plaintiff suffered
from depression and anxiety. (A.R. 761.)  According to Dr.
Makari-Judson, Plaintiff could not walk a city block without
stopping, could sit for forty-five minutes, could stand for
ten minutes, and was not capable of working an eight-hour
day for forty hours per week. (Id.)  She also concluded that
Plaintiff was not capable of working at all. (Id.)

On October 2, 2009, consulting physician Dr. Daniel
Dress examined Plaintiff.  He indicated that she had
polyarthralgias, asthma, and hypertension and had
limitations as to heavy lifting or heavy exertion. (A.R.
499.)

On October 7, 2009, Dr. Erik P. Purins reviewed the
evidence of record.  Without examining her, he concluded
that Plaintiff could perform light work with occasional
climbing of ladder/rope/scaffolds, stooping, crouching, and

crawling; occasional overhead reaching with the left arm;
and avoidance of extreme temperature changes and hazards.
(A.R. 503-10.)

On June 8, 2009, Joseph Litchman, a state agency
psychologist, reviewing the evidence of record without
examining Plaintiff, concluded that Plaintiff had moderate
major depression, could understand and remember one- and
two-step tasks, and would be able to sustain attention,
concentration, schedule, and pace for up to two hours at a
time during an eight-hour day. (A.R. 489-91.)

D.   <u>ALJ's Findings</u>.

At Step One of the disability adjudicative process, the
ALJ found that Plaintiff had not engaged in substantial
gainful activity since December 23, 2008, the date of her
application for benefits.  (A.R. 26.)  At Step Two, the ALJ
found that Plaintiff's status post left breast lumpectomy,
left arm lymphedema, and depression were severe impairments.
The ALJ found that Plaintiff's obesity, hypertension, and
asthma were not severe impairments.  (A.R. 27-8.)  The ALJ
also decided that Plaintiff's complaints of chronic back
pain and knee pain were not medically determinable

6

impairments because they were not supported by objective medical evidence.  (A.R. 27-8.)

At Step Three, the ALJ determined that Plaintiff's impairments did not meet or medically equal any listed impairments.  (A.R 28.)  The ALJ went on to conclude that Plaintiff had the residual functional capacity ("RFC") to perform light work, except she would be limited to:

> lifting twenty pounds occasionally and ten pounds
> frequently . . . sitting, standing and walking up
> to six hours out of an eight hour day . . .
> unlimited pushing and pulling . . . occasional
> climbing of ladders, ropes, scaffolds . . .
> occasional overhead reaching with the left
> dominant arm; avoidance of extreme temperature
> changes and hazards....

(A.R. 29.)  The ALJ further determined that Plaintiff could "understand, remember and carry out simple and detailed instructions [and could] concentrate for two hours at a time."  (Id.)  Based on this RFC, at Step Four, the ALJ determined that Plaintiff was capable of performing her past relevant work as a timekeeper (A.R. 36.) and, as such, was not under a disability as defined in the Social Security Act since December 23, 2008, the date Plaintiff's application was filed.  (A.R. 37.)

### III.   DISCUSSION

Plaintiff argues that the ALJ's RFC assessment was not
supported by substantial evidence because (1) the ALJ
improperly gave little weight to the opinions of Plaintiff's
treating physicians; (2) the ALJ did not incorporate the
opinions of Plaintiff's treating physicians in posing
hypothetical questions to the vocational expert; and (3) the
ALJ erred in not specifically considering the side effects
of Plaintiff's medications.

The record clearly reveals that the ALJ failed to give
proper weight to Plaintiff's treating physicians.  The
court, as noted above, will therefore reverse the decision
of the ALJ and order an award of benefits.

A.   <u>Standard of Review</u>.

Judicial review of a final decision of the Commissioner
is limited to (1) whether substantial evidence supports the
Commissioner's decision, and (2) whether the Commissioner
applied the correct legal standards.  <u>Seavey v. Barnhart</u>,
276 F.3d 1, 9 (1st Cir. 2001).  The responsibility for
weighing conflicting evidence and resolving issues of
credibility belongs to the Commissioner and his designee,
the ALJ.  <u>See</u> <u>id.</u> at 10.  The Commissioner's findings "as to

8

any fact, if supported by substantial evidence, shall be
conclusive." 42 U.S.C. § 405(g). Substantial evidence is
such evidence "as a reasonable mind might accept as adequate
to support a conclusion." Richardson v. Perales, 402 U.S.
389, 401 (1971) (internal citations omitted). Accordingly,
the court must affirm the Commissioner's findings "if a
reasonable mind, reviewing the evidence in the record as a
whole, could accept it as adequate to support his
conclusion." Rodriguez v. Sec'y of Health & Human Servs.,
647 F.2d 218, 222 (1st Cir. 1981). This is true "even if
the record arguably could justify a different conclusion."
Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d
1, 3 (1st Cir. 1987) (per curiam).

B.   Treating and Consultative Physicians.

     Plaintiff first argues that the ALJ erred by not giving
appropriate weight to the opinions of Plaintiff's treating
physicians. Specifically, Plaintiff argues that the ALJ
should have given greater weight to the opinions of Drs.
Makari-Judson and Bem. Similarly, she claims that the ALJ
should have incorporated the opinions of Makari-Judson and
Bem in formulating questions to the vocational expert.

9

The ALJ is generally required to give more weight to
the opinions of treating physicians than to other medical
opinions.  20 C.F.R. § 404.1527(c)(2).  The applicable
regulation makes clear that an ALJ should give controlling
weight to treating physicians' opinions if the opinions are
"well-supported by medically acceptable clinical and
laboratory diagnostic techniques and [are] not inconsistent
with the other substantial evidence" in the record.  Id.

    1.  Dr. Bem.

The ALJ discounted Dr. Bem's opinions because: (1) she
found no evidence that he had tested Plaintiff's physical
abilities and Plaintiff's representative conceded as much at
the hearing; (2) his opinions were inconsistent with Dr.
Makari-Judson's recommendation that Plaintiff should attempt
exercise; and (3) Dr. Bem did not provide treatment notes.

The ALJ's assertions about Dr. Bem's opinions are
flatly unsupported in the record.  First, Dr. Bem sent
Plaintiff for several physical therapy evaluations, which
documented her difficulty with movement.  (A.R. 519-527.)
Second, it is not true that Plaintiff's representative
admitted that Dr. Bem had not tested Plaintiff's physical

10

abilities.  In reaching this conclusion, the ALJ appears to
refer to the following colloquy:

> ALJ: Can you tell me, since you are familiar with
> his medical records, where in his medical records
> does he have documentation where he has actually
> performed a physical examination where he has
> asked her to bend, lift, squat, carry items, as
> well as lift something overhand or do any kind of
> manual dexterity tests?
> ATTY: There are, to my knowledge, and I can
> review, 22F is pretty extensive in terms of her
> consistent medical treatment.  I am not aware
> where he is [sic] actually did the actual tests
> that you're referring to.  However, he has
> examined her to the extent that, it is my opinion
> that he would be able to make those observations
> and include those in his source statement.

(A.R. 82-83).

This answer does not concede that Dr. Bem never
examined Plaintiff's physical capabilities.  Indeed,
Plaintiff's treatment notes, based on the physical therapy
Dr. Bem ordered, document Plaintiff's difficulty with back
pain and arm movement.  (A.R. 521.)

Finally, while the ALJ is correct that Dr. Makari-
Judson recommended an attempt at exercise as a treatment for
Plaintiff's movement and physical pain problems, this
recommendation in no way undercuts Dr. Bem's findings.
(A.R. 586.)  Dr. Makari-Judson's recommendation was made in

August 2009.  (Id.)  Plaintiff's problems exercising were
well documented in her physical therapy notes as of February
2010.  (A.R. 521.)  Furthermore, there is no indication that
Dr. Makari-Judson opined that Plaintiff was having success
with exercise.  She merely suggested that Plaintiff "try" to
exercise in order to improve her endurance and limit
fatigue.  (A.R. 586.)

     2.  <u>Dr. Makari-Judson</u>.

    The ALJ rejected Dr. Makari-Judson's opinions because
she found that they were inconsistent and contrary to her
instruction for Plaintiff to attempt exercising.  (A.R. 33-
34). Specifically, the ALJ concluded that:

- it was illogical for Makari-Judson to recommend
  exercise while concluding that Plaintiff could not
  engage in basic physical activities;

- it was inconsistent for Makari-Judson to answer
  that Plaintiff's symptoms were not affected by
  emotional factors while stating that depression
  and anxiety contributed to Plaintiff's physical
  problems;

- Makari-Judson's opinion that Plaintiff suffered

from problems with her lower extremities was not
documented in treatment records and was
illogically based on Plaintiff's left arm issues;

- Makari-Judson's findings were not based on
medically acceptable signs, symptoms, and or
laboratory findings.

(A.R. 33-4.)

The ALJ's conclusions as to Dr. Makari-Judson's opinion
are unsupported by the record.  As noted above, Makari-
Judson's instruction for Plaintiff to try exercise is in no
way inconsistent with a later opinion that most movement was
a problem for Plaintiff.  Contrary to the ALJ's findings,
Makari-Judson and her nurse practitioner did in fact
document Plaintiff's problems with her lower extremities.
Their treatment notes indicate that Plaintiff "has some
discomfort in her legs and is being treated for arthritis,"
(A.R. 685), had back pain (A.R. 706), and had arthritis in
the legs, knees, and back, (A.R. 582).  Makari-Judson's
treatment notes, contrary to the ALJ's conclusion that no
medically significant examination was performed, indicate
that she examined Plaintiff's upper and lower extremities

13

(A.R. 594.)  Makari-Judson's answer regarding the
contribution of emotional problems to Plaintiff's condition
appear to stem from the vagueness of the question itself,
rather than any inconsistency on her part.

    3.  <u>Vocational Expert</u>.

    An ALJ's hypothetical questions to a vocational expert
must contain the relevant facts.  <u>Padilla v. Barnhart</u>, 186
F. App'x 19, 21 (1st Cir. 2006); <u>see</u> <u>Lizotte v. Secy's of</u>
<u>Health and Human Servs.</u>, 654 F.2d 127, 131 (1st Cir. 1981).
Given that the ALJ incorrectly discredited Drs. Bem and
Makari-Judson's opinions, it was improper not to include
these opinions in the hypothetical posed to the vocational
expert.  <u>Padilla</u>, 186 F. App'x at 21.

C.  <u>Medication Side Effects</u>.

    Plaintiff's remaining argument is that the ALJ did not
consider the side effects of medications she is taking.  In
particular, Plaintiff complained of difficulty sleeping.
(A.R. 89.)  To the extent that her documented fatigue would
affect her ability to work in the national economy, such
evidence should have been considered by the ALJ.

IV. <u>CONCLUSION</u>

14

For the foregoing reasons, Plaintiff's Motion To
Reverse the Commissioner (Dkt. No. 11) is hereby ALLOWED,
and Defendant's Motion for Order Affirming the Decision of
the Commissioner (Dkt. No. 14) is hereby DENIED.  The clerk
will enter judgment for Plaintiff.  Defendant is ordered to
calculate an appropriate award of benefits, both retroactive
(to the extent Plaintiff is entitled to them) and
prospective.  The case is remanded for further proceedings
consistent with this decision.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U.S. District Judge